UNITED STATES DISTRICT COURT
EASTERN DISTRICT of TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09-cr-174 |
| | ) | |
| TERNA RAMONE HATTEN | ) | Judge Mattice |
| also known as "Bud" | ) | Magistrate Judge Carter |
| also known as "66" | ) | |
| also known as "Big 6" | ) | |
| also known as "Ternae Hatten" | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Terna Ramone Hatten's Motion to Suppress evidence found in an apartment where he frequently stayed (Doc. 22) and Motion to Suppress statements following a traffic stop (Doc. 23) are before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

The undersigned must decide whether police had an affirmative duty to ask the Defendant being detained in a police car nearby for permission to search the apartment he shared with his girlfriend after the girlfriend gave police permission to search the apartment. The undersigned finds the police had no such duty, and it is RECOMMENDED this motion (Doc. 22) be DENIED. The government and the Defendant have reached an agreement as to Defendant's motion to suppress statements, and it is accordingly RECOMMENDED that Defendant's motion to suppress statements (Doc. 23) be GRANTED in part and DENIED in part.

II. Relevant Facts

A hearing for the two motions to suppress evidence was held before the undersigned

Magistrate Judge on Wednesday, June 16, 2010. Chattanooga Police Department (CPD) Officer Rusty Morrison, Federal Bureau of Investigation (FBI) Agent Paul Healy, and Madrissa McKibben testified. I found them to be credible witnesses and am making the following factual findings based upon their testimony.

*Witnesses*

CPD Officer Rusty Morrison has nearly eight (8) years of law enforcement experience and has spent the past two as a member of the crime suppression unit. FBI Agent Paul Healy has twelve (12) years of experience in the FBI and is a member of the violent crimes task force. Madrissa McKibben was the girlfriend of the defendant at the time of the incident as well as the lessee and resident of the apartment which was searched.

CPD Officer Rusty Morrison

On November 25, 2009, following an investigation of Defendant's involvement in drug trafficking, Officer Rusty Morrison and other law enforcement officers from the Chattanooga Police Department and the FBI drove to an apartment at 2525 6th Avenue in the East Lake Courts housing complex in Chattanooga to arrest the defendant on a federal indictment. The apartment was defendant's girlfriend's apartment, and the agents were familiar with it, as they had repeatedly surveilled the defendant there during the investigation. They knew that the apartment was leased solely to Madrissa McKibben but that the defendant frequently visited and stayed over night at the apartment.

While officers were surveilling the apartment from their vehicles, Defendant, who was standing just outside the apartment, became aware of the officers and fled into the hallway of a neighboring building. Upon seeing the Defendant flee, the officers moved in to arrest him.

Officer Morrison arrested the Defendant in the neighboring hallway located approximately twenty (20) to thirty (30) yards from the doorway of his girlfriend's apartment. Defendant was then placed in a nearby police vehicle. At no time was the defendant asked for consent to search the apartment at 2525 6th Avenue.

After the Defendant was arrested and sitting in the police vehicle, officers talked to Defendant's girlfriend, Madrissa McKibben, at the doorway of her apartment at 2525 6th Avenue. The officers informed McKibben they did not have a search warrant for her residence. Because there was a large crowd gathering outside, they requested to enter her residence to talk to her. She granted admission. Next, the officers requested her consent to search her residence, and agents informed McKibben she did have the right to refuse consent for a search of her residence. McKibben voluntarily executed a written grant of consent to search her residence at 2525 6th Avenue. (Gov. Ex. 2). At no time did the agents engage in coercive or threatening acts, nor did McKibben exhibit any diffidence or fear of the agents at her residence.

In the search of the apartment, Officer Rusty Morrison found the following pieces of evidence relevant to this case: Two (2) large bags of white powder within a box of baking soda and a small bag of white powder on the kitchen counter in the kitchen; a suspected bag of cocaine base and a digital scale within a coffee pot in the kitchen; small plastic bags with suspected drug residue on top of the refrigerator; and four (4) cellular phones in the living room. (Def. Ex. 1).

### FBI Agent Paul Healy

Following the search of McKibben's residence, agents requested she come to the local office of the Federal Bureau of Investigation ("FBI"). McKibben agreed to this request and

drove her own vehicle to the office. McKibben's mother, who had been at the residence, accompanied McKibben to the FBI office. Once at the FBI office, McKibben was read her Miranda Rights before she was questioned.

Madrissa McKibben

Madrissa McKibben testified she freely signed the consent to search form and confirmed she did not feel coerced or forced to sign it.

### III. Law and Argument

*A. Motion for Suppression of Statements Made During Traffic Stop (Doc. 23)*

The Defendant has moved to suppress statements made during a traffic stop on November 5, 2009. The Government has answered that it only intends to use a single statement from the traffic stop itself as evidence at trial. The parties have stipulated this statement was made while the Defendant was held in a non-custodial manner and therefore not subject to *Miranda* warnings. The Defendant concedes this statment should be admissible. The conversation to be admitted is:

Officer: "Do you have a job?"

Defendant: "No."

The Government acknowledges it is unclear whether Defendant had been given his *Miranda* warnings before Defendant made statements while sitting in the police car. The government therefore asserts it will not seek to introduce any statements from the November 5, 2009 traffic stop except Defendant's statement that he had no job. It will therefore be recommended that all defendant's statements, other than his statement that he had no job, be suppressed. This motion is therefore essentially settled by agreement.

*B. Motion for the Suppression of Evidence from the 2525 6th Avenue Apartment (Doc. 22)*

It is settled law that consent to search is a permissible exception to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Moon,* 513 F.3d 527*,* 537 (6th Cir. 2008), *cert. denied*, 128 S.Ct. 2493 (2008)*; United States v. Ivy*, 165 F.3d 397, 401 (6th Cir.1998). To validly waive the rights secured by the Fourth Amendment, consent must be knowing and voluntary. *Schneckloth,* 412 U.S. at 222; *United Moon*, 513 F.3d at 537; *Ivy*, 165 F.3d at 401.

There is no dispute between the government and Defendant that McKibbens waived her Fourth Amendment rights and knowingly and voluntarily gave her consent to police to search the apartment where she and Defendant lived.[1] Rather, the dispute appears to center on the fact that police did not ask Defendant for his consent to search the apartment even though he was being detained only a few yards away in a police car.

Relying on *Georgia v. Randolph*, 547 U.S. 103 (2006), the Defendant argues that even though his girlfriend gave consent to search the apartment, the failure of police to ask *him* for consent when he was so close by violated his Fourth Amendment rights and requires suppression of all evidence found in the apartment. On the contrary, I find the decision in *Georgia v. Randolph*, 547 U.S. 103 (2006) to require the opposite result desired by Defendant.

In *Georgia v. Randolph*, 547 U.S. 103, 122-23 (2006), the Supreme Court held police could not legally search a residence if one occupant, present at door of the residence, refused consent to search even though a co-occupant gave consent to search. In its analysis, the

---

[1]The government has not contended that Defendant had no legitimate expectation of privacy in the apartment and, in fact, the evidence indicates police believed Defendant frequently stayed overnight at the apartment.

Supreme Court discussed the "co-occupant consent rule" as recognized in *United States v. Matlock*, 415 U.S. 164 (1974) and in *Illinois v. Rodriguez*, 497 U.S. 177 (1990). *Randolph*, 547 U.S. at 121-22.

In *Matlock*, the defendant was arrested in the yard of a house where he lived with a woman. Police went to the door of the house and asked the woman for consent to search which she gave. The defendant, who was detained in a squad car nearby, was not asked for consent to search. The *Matlock* Court held that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock*, 415 U.S. at 170.

In *Rodriguez*, police were permitted entry to an apartment by a woman who claimed to be an occupant of the apartment. Before police entered, she told the police that her boyfriend, who also lived there, was asleep in the bedroom of the apartment. Police did not attempt to rouse the boyfriend by knocking on the door in order to obtain his permission to enter; rather, they relied upon the woman's consent and entered the apartment where they saw cocaine and drug paraphernalia in plain view. The Court held that where police reasonably believed the woman to be a co-occupant of the apartment, police could rely upon her consent to enter the apartment without violating the Fourth Amendment. *Rodriguez*, 497 U.S. at 186.

The *Randolph* decision did not overrule the *Matlock* and *Rodriguez* decisions. Rather, the *Randolph* Court distinguished the case before it from *Matlock* and *Rodriguez* on the ground that the Randolph defendant was immediately present with his co-occupant and with police and therefore able to express his dissent whereas the *Matlock* and *Rodriguiez* defendants were not present at the time consent was given and therefore they could neither give nor refuse consent.

*Id.* at 121-22. In making this distinction, the *Randolph* Court explained:

> Although the Matlock defendant was not present with the opportunity to object, he was in a squad car not far away; the Rodriguez defendant was actually asleep in the apartment, and the police might have roused him with a knock on the door before they entered with only the consent of an apparent co-tenant. If those cases are not to be undercut by today's holding, we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.
>
> *This is the line we draw*, and we think the formalism is justified.

*Id.* at 121-22 (emphasis added).

The *Randolph* Court expressly rejected the notion that police have an affirmative duty to seek out a nearby co-occupant in order to request permission to search after another co-occupant has already given it:

> . . . we think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received. ... Better to accept the formalism of distinguishing Matlock from this case than to impose a requirement, time consuming in the field and in the courtroom, with no apparent systemic justification.

*Id* at 122. The Court gave only one qualification to this fine line rule: "[s]o long as there is no evidence that police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection," the co-occupant's consent will be sufficient to permit the search. *Id.* at 121.

In sum, *Matlock* expressly disavows any duty owed by police to seek out the nearby tenant to request permission to search when a co-occupant has already given the required consent. *Accord, United States v. Penney*, 576 F.3d 297, 309 (6th Cir. 2009) (police are not

required to ask one co-occupant in a police station for consent to search when another co-occupant in another part of the same police station has already given consent); *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007) ("if a potential defendant with self interest in objecting to the search is present and actually objects, then a third party's permission does not suffice for a reasonable search. If that potential objector is 'nearby but not invited to take part in the threshold colloquy,' on the other hand, that potential objector 'loses out,' and the search will be deemed valid.") (citing *Randolph*, 547 U.S. at 121.) As previously stated, the only exception to this rule occurs when police have deliberately removed the defendant from the premises in order to avoid asking him for consent.

In the instant case, McKibben, an occupant of the apartment at issue, gave her consent to search. Defendant was not immediately present when this consent was given. Further, the evidence shows police did not deliberately remove Hatten from the doorway of the apartment in order to ask McKibben for consent while he was not present. Hatten fled when he realized police were watching him. Because Defendant chose to run from the apartment and was subsequently arrested some twenty or thirty yards away, he "lost out" on his opportunity to deny consent. I conclude police properly obtained valid consent to search the apartment at 2525 6th Avenue, and I will therefore recommend defendant's motion to suppress evidence found in the apartment be denied.

IV. Conclusion

For the reasons stated herein, it is RECOMMENDED Defendant's motion to suppress statements (Doc. 23) be GRANTED in part and DENIED in part and Defendant's motion to suppress evidence found at 2525 6th Avenue, Chattanooga, TN on November 25, 2009 (Doc. 22) be DENIED.[2]

    SO ORDERED.

    ENTER:

Dated: July 12, 2010          s/William B. Mitchell Carter
                                             UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).